FILED
 2022 Aug-01 PM 03:59
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| LEE INVESTMENTS LLC, | ) |
| Plaintiff, | ) |
| v. | ) 7:20-cv-00903-LSC |
| NAUTILUS INSURANCE COMPANY, | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**

On May 21, 2020, Lee Investments, LLC ("Lee Investments") sued Nautilus Insurance Company ("Nautilus") in Alabama state court alleging Nautilus failed to meet their obligation to pay Lee Investments as a "Loss Payee". (Doc. 1-1 at 7.) The suit was removed to the U.S. District Court, Northern District of Alabama. (Doc. 17 at 15.) On December 30, 2021, Nautilus filed this motion for summary judgment alleging the Insured's failure to satisfy the Policy's conditions precedent removes Nautilus's obligation to pay Less Investments, a Loss Payee. (Doc. 17 at 3.) The motion is fully briefed and ripe for review. For the reasons discussed below, Defendant's motion is due to be granted.

I. **FACTS AND PROCEDURAL POSTURE**

This suit arose out of a fire damaging 177 Airport Road in Centreville, AL ("the Property"), which is owned by Lee Investments, rented by Maciel Recovery & Recycling ("the Insured"), and insured by Nautilus. (Doc. 1-1 at 6-7.) On May 21, 2014, Lee Investments leased the Property to the Insured. (*Id.* at 6.) Pursuant to the terms of the lease, the Insured applied for and received a Commercial Property Policy ("the Policy") with Nautilus effective May 2014 to May 2015. (*Id.* at 6; Doc. 17-3 at 1.)

**A. The Insurance Policy**

The Insured is the only "Named Insured" on the Policy. (Doc. 17-4 at 2.) However, the Policy's Loss Payable Provisions Endorsement ("the Provision") identifies Lee Investments as a "Loss Payee" under the heading "Schedule." (*Id.* at 53.) Bellow the Schedule, there is a chart titled "Provisions Applicable" with three columns: Loss Payable, Lender's Loss Payable, and Contract of Sale. (*Id.*) Each column is associated with a subsequent clause of the Provision: Clause B—Loss Payable, Clause C—Lender's Loss Payable, and Clause D—Contract of Sale. (*Id.* at 53-54.) In the chart, only "Loss Payable" has been marked with an "X". (*Id.* at 53.) Following the chart, the Provisions states:

> "A. When the endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.
> The following is added to the LOSS PAYMENT Loss Conditions, as indicated in the Declarations or by an 'X' in the Schedule:
> B. LOSS PAYABLE
> For Covered Property in which both [the Named Insured] and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:
> 1. Adjust losses with [the Named Insured]; and
> 2. Pay any claim for loss or damage jointly to [the Named Insured] and the Loss Payee, as interests may appear.
> C. LENDER'S LOSS PAYABLE
> 1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgage holder or trustee
> […]
> c. If we deny [the Name Insured's] claim because of [the Name Insured's] acts or because [the Name Insured has] failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment […]" (*Id.* at 53-54.)

## B. Events leading to this action

On July 11, 2014, the Insured notified Nautilus of a fire that damaged the Property on June 22, 2014. (Doc. 17-1 at 1.) Nautilus acknowledged the claim of loss and assigned an adjuster to the case on July 17, 2014. (Doc. 17-2 at 6.) Through its investigation, Nautilus identified multiple potential issues with the Insured's claim, which led Nautilus to request documents, a signed proof of loss, and a signed examination under oath from the Insured per the "Duties in the Event of Loss or Damage." (Doc. 17-1 at 2-3.) That provision states:

> "3. Duties In The Event Of Loss Or Damage

    a. You must see that the following are done in the event of loss or damage to Covered Property:

        […]

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim […]

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath […] about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed." (Doc. 17-4 at 24-25.)

    Nautilus's attorney scheduled an examination under oath of the Insured through Richard M. Kemmer, Jr., the Insured's attorney at the time, for February 12, 2015. (Doc. 17-5 at 1.) On January 23, 2015, Nautilus's attorney confirmed the examination and additionally requested the Insured produce a sworn proof of loss and other documents (e.g. the Insured's title to the Property). (Doc. 17-6 at 1.) On February 10, 2015, due to the Insured failing to gather the requested documents, the examination was postponed until March 6, 2015. (Doc. 17-5 at 2.) However, the March 6, 2015 examination was also canceled. (*Id.*) On July 29, 2016, Nautilus sent Kemmer a letter reaffirming the need for an examination of the Insured, but neither Kemmer nor the Insured responded to the letter. (*Id.*) The Insured never provided an examination or the requested documents and records. (*Id.* at 3.)

    Similarly, on June 15, 2015, Nautilus's attorney requested documents from Lee Investments and an examination under oath of Lee Investments's owner, Charles Lee. (Doc. 17-6 at 28.) Lee Investments's attorney objected to Lee Investment, a

Loss Payee under the Policy, being subjected to a document request or examination. (*Id*. at 18-19.) Nautilus attorney explained the need for the documents and suggested the examination of Lee be rescheduled. (*Id*. at 20-21.) On September 11, 2015, Nautilus's attorney reaffirmed the request for examination and documentation. (*Id*. at 25.) Lee Investments allegedly sent an email to Nautilus's attorney on September 13, 2015 asking for an update on the claim, but without receiving a response. (Doc. 18-2 at 4.) On September 16, 2015 Nautilus's attorney sent a letter directly to Lee Investments's owner, Charles Lee. (Doc. 17-6 at 26-27.) On February 3, 2016 Nautilus's attorney emailed Lee Investments's new attorney reaffirming the request for an examination under oath and for certain documents. (*Id*. at 37.) Lee Investments never provided the requested documents and Charles Lee never provided an examination under oath. (Doc. 17-5 at 5.)

On September 21, 2017, Nautilus denied the Insured's claim for the 2014 fire because the Insured failed to comply with the investigation. (Doc. 17-6 at 41-45.)

**C. The Lawsuit**

On May 21, 2020, Lee Investments sued Nautilus in Alabama state court alleging the latter failed to meet their obligation to pay Lee Investments as a Loss Payee. (Doc. 1-1 at 7.) The suit was removed to the U.S. District Court, Northern District of Alabama. (Doc. 17 at 15.) On December 30, 2021, Nautilus filed this motion for

summary judgment alleging the Insured's failure to satisfy the Policy's conditions precedent removes Nautilus's obligation to pay Less Investments, a Loss Payee. (Doc. 17 at 3.)

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor." *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). The Court does not weigh the evidence as fact-finder; rather, it must "determin[e] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). When the moving party properly supports their allegations, a genuine issue of material fact persists only if the nonmovant presents sufficient evidence of their allegations. *Id.* at 249.

## III. ANALYSIS

In Alabama, insurance policies are governed by the contract law of the jurisdiction the policy was delivered in. *Thompson v. Acceptance Ins. Co.*, 689 So. 2d 89, 92 (Ala.

Civ. App. 1996). Respecting the freedom to form contracts, the court's ultimate purpose when considering insurance policies is to enforce the agreement that the parties made. *See Safeway Ins. Co. of Ala. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005). Rather than altering the terms of the agreement or introducing ambiguity, the court must enforce the contract according to the contract's written words. *Id.*

In the instant case, the unambiguous language of the Policy signed by both parties applies a simple loss payable provision to Lee Investments making Lee Investments's claim against Nautilus dependent on the Insured's claim against Nautilus. The Insured's claim was correctly denied because the Insured failed to satisfy the Policy's conditions precedent.

**A. The Policy is not ambiguous because there is only one reasonable interpretation.**

Determining if a contract is ambiguous is a question of law for the trial court. *Elder v. E.I. Dupont De Nemours and Co., Inc.*, 479 So.2d 1243, 1247 (Ala. 1985). A contract is ambiguous only if there are multiple reasonable interpretations of its provisions. *Universal Underwriters Inc. Co. v. Thompson*, 776 So.2d 81, 84 (Ala. 2000). *See also Voyager Life Ins. Co., Inc. v. Whitson*, 703 So.2d 944, 948 (Ala. 1997). The court will not add ambiguity to a contract that is otherwise unambiguous. *P&S Business, Inc. v. South Cent. Bell Telephone Co.*, 466 So.2d 928, 931 (Ala. 1985). Thus, summary judgment is often proper if the trial judge finds no ambiguity for the jury to resolve.

*See, e.g., Cherokee Farms, Inc. v. Fireman's Fund Ins. Co., Inc.*, 526 So.2d 871, 873 (Ala. 1988) (granting summary judgment for the insurer because all evidence suggested the insurance policy was unambiguous and that the insurer upheld its obligation under the policy).

The Provision at issue here is not ambiguous because there is only one reasonable interpretation of its terms. The Provision's Schedule lists Lee Investments as a Loss Payee and specifies which properties the Policy applies to. Under this, the Schedule has a chart with the possible provisions listed—Loss Loss Payable, Lender's Loss Payable, and Contract of Sale—and the applicable provision is marked with an "X" (Loss Payable). Clause A of the Provision clarifies that the subsequent clauses apply "as indicated in the Declarations or by an 'X' in the Schedule." Because clause A specifies that only the provisions marked with an "X" in the Schedule apply and because only the Loss Payable provision was marked with an "X", the only reasonable construction of the provision is that only Clause B—Loss Payable— applies to Lee Investments.

Unlike Lee Investments asserts, clause A does not harbor ambiguity by stating "the Schedule" rather than "this Schedule." While some portions of the Policy qualify references to a specific schedule with language such as "this Schedule" or "the above Schedule", other portions of the Policy use language similar to clause A.

(Doc. 17-4 at 47 and 48.) Additionally, clause A specifies that "the Schedule" it is referring to contains an "X". No other schedule in the Policy contains "X"s, meaning clause A can only be referring to the Provision's Schedule. Because there is only one reasonable interpretation of the Provision, it is not ambiguous and summary judgment is due to be granted.

**B. The only reasonable interpretation of the Provision applies Clause B, a simple loss payable provision, to Lee Investments.**

In insurance policies, loss payable provisions add parties, "Loss Payees", other than the insured party to receive payment from the insurer in the case of property loss. There are two types of loss payable provisions under Alabama law: a simple loss payable provision and standard mortgage clause. *Norwest Mortg., Inc. v. Nationwide Mut. Fire Ins. Co.*, 718 So.2d 15, 17 (Ala. 1998). Under the former, the Loss Payee only has a viable claim against the insurer if the insured has a viable claim against the insurer. *Home Loan & Finance Co. v. Fireman's Fund Ins. of San Francisco, Cal.*, 221 Ala. 529, 530 (Ala. 1930). The Loss Payee is "entitled to payment only in case a liability accrues to the insured." *Id*. The second type of Loss Payable provision, a standard mortgage clause, creates a separate contract between the Loss Payee and insurer, meaning the Loss Payee may be compensated by the insurer even if the insured is not compensated by the insurer. *Liverpool & London & Globe Ins. Co. v. Dickinson*, 242 Ala. 107, 108-9 (Ala. 1941). These types of provisions are

distinguished based on the language of the policy. *Norwest Mortg., Inc. v. Nationwide Mut. Fire Ins. Co.*, 718 So.2d at 17.

A standard mortgage clause is marked by specific language in the insurance policy forming a separate contract between the Loss Payee and the insurer. *Id*. In *Norwest*, the insurance policy stated, "If we deny your [the homeowner/insured's] claim, that denial will not apply to a valid claim of the mortgagee [i.e. Loss Payee]…" *Id*. at 16. There, the court held this policy language created a standard mortgage clause because it indicated a separate contract between the Loss Payee and the insurer. *Id*. at 17. *See also Am. Safety Indem. Co. v. Fairfield Shopping Ct., LLC*, No. 2:12 CV-02415-SGC, 2016 WL 4732581, at *2 (N.D. Ala., Sept. 12, 2016) (applying Alabama law) (finding a standard mortgage clause when the contract specified the "mortgageholder will still have the right to receive loss payment" even if the mortgagor's action exclude them from recovery); *Int'l Surplus Lines Ins. Co. v. Associates Com. Corp.*, 514 So.2d 1326, 1326 (Ala. 1987) (holding the contract was a standard mortgage clause because it stated "the interest of the ... Mortgagee ... shall not be invalidated by any act or neglect of the ... Mortgagor").

Here, Clause B of the Provision is a simple loss payable clause because it indicates the Loss Payee's claim is dependent on the insured's claim and because it does not include clear language of a separate contract between the Loss Payee and the insurer.

Clause B states the insurer will "pay any claim for loss or damage jointly to [the Named Insured] and the Loss Payee." (Doc. 17-5 at 53.) The term "jointly" indicates the Loss Payee will only be paid if the insured is also paid. Additionally, Clause B does not include language of a separate contract that marks a standard mortgage clause. This contrasts with the language of the subsequent clause, Clause C, which states "if we deny [insured's] claim because of [insured's] acts… the Loss Payee will still have the right to receive loss payment." (*Id*. at 54.) The explicit language of a separate contract in Clause C shows the parties intended a simple loss payable under clause B and a standard mortgage clause under clause C. Because the contract language indicates the Loss Payee's claim is dependent on the insured's claim and because it does not explicitly state that a separate contract is formed between the Loss Payee and the insurer, clause B is a simple loss payable clause.

## C. Nautilus is not obligated to compensate Lee Investments, a Loss Payee, because the Insured did not satisfy the Policy's conditions precedent.

The distinct characteristic of a simple loss payable clause is that the Loss Payee's claim against the insurer is dependent on the insured's claim against the insurer. *Norwest Mortg., Inc. v. Nationwide Mut. Fire Ins. Co.*, 718 So.2d at 17. The Loss Payee can be compensated only if the insured is compensated. *Id*. Some policies impose duties on the insured, called "loss conditions", in the case of property loss. *See, e.g., Pittman v. State Farm Fire and Cas. Co.*, 868 F.Supp.2d 1335, 1340 (M.D. Ala. 2012)

(applying Alabama law) (requiring the insured to "report as soon as practicable… any loss or damage" and "to produce such records as we may need"). In Alabama, these loss conditions are construed as strict conditions precedent and the "insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims." *Nationwide Ins. Co. v. Nilsen*, 745 So.2d 264, 267 (Ala. 1998). An insured must present evidence of their satisfying the policy's conditions precedent to survive an insurer's motion for summary judgment. *Morton v. Auto. Ins. Co. of Hartford, Conn.*, 102 F.Supp.3d 1248, 1263 (N.D. Ala. 2015) (applying Alabama law).

Refusing to provide an examination requested by the insurer constitutes failure to meet an insurance policy's condition precedent and removes the insurer's obligation to pay. *Nationwide Ins. Co. v. Nilsen*, 745 So.2d at 266. In *Nationwide*, the insurance policy permitted the defendant (the insurer) to examine the plaintiff (the insured) in the case of a property loss investigation. The defendant requested such an examination and, at the plaintiff's request, rescheduled the examination multiple times. Without ever complying to the examination, the plaintiff filed a lawsuit against the defendant. The court granted summary judgment for the defendant holding that the plaintiff's failure to satisfy the loss conditions, such as the examination, precluded the defendant from any obligation to pay the plaintiff. *Id. See also Hillery*

*v. Allstate Indem. Co.*, 705 F.Supp.2d 1343, 1364 (S.D. Ala. 2010) (applying Alabama law) (holding that the insured's failure to submit accurate inventory forms breached the condition precedent and removed insurer's obligation to make payment on the claim).

Additionally, to survive an insurer's motion for summary judgment regarding a breach of contract claim, the insured must provide substantial evidence of their satisfying the conditions precedent. *Morton v. Auto. Ins. Co. of Hartford, Conn.*, 102 F.Supp.3d at 1263. In *Morton*, the insurance policy imposed "duties after loss," requiring the insured to provide documents, records, and a signed examination. At summary judgment, the insurer presented "extensive evidence" of their repeated attempts to solicit the needed information and of the insured's continual failure to provide accurate information. *Id*. In response, the insured merely alleged full compliance with the duties after loss without providing any evidence to support the allegation. Because the insured did not provide "any substantial evidence contradicting" the insurer's evidence, the court granted summary judgement for the insurer. *Id*. *See also Anderson v. Liberty Lobby*, 477 U.S. at 249 (establishing that summary judgement is appropriate when there is not "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

According to evidence submitted by Nautilus, the Insured failed to comply with the conditions precedent imposed by the Policy. Like the policy in *Nationwide*, Nautilus's policy lists "Duties in the Event of Loss or Damage", which include providing complete inventory of the damage, sending sworn proof of loss, and, upon Nautilus's request, submitting to an examination. Nautilus repeatedly notified the Insured of these duties by including them in correspondences. (Doc. 17-2 at 6-7; Doc. 17-6 at 8-9.) Following the Policy, in the beginning of 2015, Nautilus requested a sworn proof of loss, other documents, and an examination of the Insured. (Doc. 17-5 at 1.) Like *Nationwide*, Nautilus's evidence suggests the Insured never provided a sworn proof of loss or any of the other requested documents. (*Id*. at 3.) Additionally, after re-scheduling multiple times, the Insured finally canceled and never submitted to an examination. (*Id*.) Because the Policy imposed conditions precedent and because Nautilus's evidence shows the Insured failed to satisfy those duties, Nautilus is not obligated to compensate the Insured for the property loss.

Contrary to Nautilus's evidence, Lee Investments asserts that the Insured's "claim was improperly denied by Defendant." (Doc. 18 at 4.) However, like the plaintiff in *Morton*, Lee Investments does not present any evidence to support that conclusory statement. In its response to Nautilus's motion, Plaintiff provides two pieces of evidence: one page of the insurance policy and a four-page affidavit of

Summer Lee, a member of Lee Investments. Plaintiff does not provide evidence that creates a dispute as to whether the Insured complied with all requests Nautilus made of the Insured. Nautilus presents evidence of mailing a letter to the Insured citing the "Duties in the Event of Loss or Damage" (Doc. 17-6 at 14-15), requesting documents and an examination under oath from the Insured and Lee Investments (*Id.*), attempting to schedule the examination under oath with the Insured (*Id.* at 25-27), and the Insured's ultimate failure to provide documents or submit to an examination under oath. (Doc. 17-5 at 5.) Lee Investments presents little to no evidence regarding the Insured's conduct, even though Lee Investment's current counsel was the Insured's counsel when Nautilus was soliciting the examination and documentation. Because Nautilus properly supported their case and Lee Investments failed to present contrary evidence, there is not sufficient evidence for a jury to find that the Insured met the conditions precedent.

While Plaintiff's evidence does create disputed facts regarding Lee Investments's compliance with Nautilus's investigation, these disputes are not material to the result of this suit. Lee Investments alleges they submitted multiple proof of loss forms (Doc. 18-2 at 3), while Nautilus contends Lee Investments did not submit the forms. (Doc. 20 at 4.) Similarly, Lee Investments alleges Nautilus cancelled the examination Lee Investments was willing to conduct (Doc. 18 at 4),

while Nautilus alleges they did not cancel the examination and made multiple unsuccessful attempts to contact Lee Investments regarding the examination. (Doc. 20 at 4.) However, these disputed facts are not material to this suit because the Insured's failure to comply with the investigation bars Nautilus from any obligation to the Insured or to Lee Investments. As a result, summary judgment is due to be granted.

## IV. CONCLUSION

The only reasonable interpretation of the Policy applies a simple loss payable provision to Lee Investments, which makes Lee Investments's claim against Nautilus dependent on the Insured's compliance with the conditions precedent. The Insured failed to satisfy the conditions precedent, removing Nautilus's obligation to pay the Insured or Lee Investments. For these reasons, Defendant's Motion for Summary Judgment is due to be granted. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on August 1, 2022.

L. Scott Coogler
United States District Judge

206888